**CHRYSLER CORPORATION and Chrysler Motors Corporation**

v.

**James E. MALLOY, Commissioner of Motor Vehicles and Raymond E. Grout, Deputy Commissioner of Motor Vehicles, State of Vermont.**

**Civ. A. No. 5352.**

United States District Court
D. Vermont.
Dec. 30, 1968.

John M. Dinse, Wick, Dinse & Allen, Burlington, Vt., Robert L. Ackerly, Sellers, Conner & Cuneo, Washington, D. C., for plaintiffs.

William T. Keefe, Asst. Atty. Gen., Montpelier, Vt., for defendants.

A brief of amicus curiae supporting plaintiffs' position was filed by Clarke A. Gravel, Gravel, Bing & Shea, Burlington, Vt., John H. Pickering, Wilmer, Cutler & Pickering, Washington, D. C., for the Automobile Mfrs. Ass'n, Inc.

Briefs of amici curiae supporting defendants' position were filed by Gerald H. Cohen, Civil Div., Dept. of Justice, for U. S. Dept. of Transportation, and by Kenneth A. Roberts, Washington, D. C., for Vehicle Equipment Safety Commission.

## OPINION

LEDDY, District Judge.

This is an action brought by Chrysler Corporation and Chrysler Motors Corporation, both Delaware corporations, against the Vermont State Commissioner of Motor Vehicles and his Deputy Commissioner for an injunction restraining the Commissioner from requiring approval of an auxiliary headlamp known as "Super Lite", mounted in certain 1969 Dodge automobiles and from interfering with the sale of such automobiles within the State of Vermont. Plaintiffs contend that the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1425 (Supp. II 1966), has pre-empted regulation by the Commissioner in regard to the sale of motor vehicles equipped with "Super Lite."

The complaint alleges that "Super Lite" is an auxiliary headlamp mounted in the grille of a motor vehicle. It is intended to be used in conjunction with low beam headlights to increase the strength of the headlamp system without producing the glare effects associated with high beams. Plaintiffs installed "Super Lite" as optional equipment on certain 1969 model Dodge automobiles and scheduled September 19, 1968, as the date of introduction of the new 1969 model Dodges into the State of Vermont.

Sometime prior to the introduction date, the Vermont Commissioner of Motor Vehicles learned that Chrysler intended to sell Dodge automobiles equipped with "Super Lite" in Vermont. In conversations with representatives of

Chrysler, the Commissioner took the position that unless Chrysler submitted "Super Lite" to the Department for testing and approval, cars equipped with the "Super Lite" would not be allowed to pass inspection in Vermont. The Commissioner has since tested the light and has decided that operation with the light installed may create a safety hazard under some driving conditions. Chrysler contends that the Commissioner does not have the power to require submission of the light for testing or to deny approval and refuse to pass in inspection vehicles equipped with the light because of the pre-emptive effect of the National Traffic and Motor Vehicle Safety Act of 1966 and regulations issued pursuant to the Act.

On September 19, 1968, the plaintiffs brought this action seeking an injunction against the Commissioner's interference with the sale and distribution of plaintiffs' 1969 automobiles equipped with "Super Lite." A temporary restraining order was issued on the following day. Subsequently, a hearing was held on a final injunction and briefs were submitted by the parties and by the Vehicle Equipment Safety Commission, the United States Department of Transportation and the Automobile Manufacturers Association who were allowed to enter as amici curiae.

## I.

### JURISDICTION

Before the merits can be reached, certain objections to jurisdiction must be disposed of. The Commissioner has contended that this action may not be maintained because (1) it is a suit against the State without its consent barred by the Eleventh Amendment to the Constitution and (2) the amount in controversy does not exceed ten thousand dollars.

■ The first ground may be disposed of summarily. Where the claim is that the statute pursuant to which a state officer is acting is unconstitutional, the suit is deemed to be against the officer in his individual capacity. Ex parte Young, 209 U.S. 123, 28 S.Ct.

441, 52 L.Ed. 714 (1908). This general principle applies where the State statute is alleged to be unconstitutional because it has been pre-empted by Federal law. Clover Leaf Butter Co. v. Patterson, 116 F.2d 227 (5th Cir. 1940), rev'd on other grounds, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754 (1942).

■ The second contention is also without merit. Under 28 U.S.C. § 1337 (1964) the United States District Courts have jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce * * *" irrespective of the amount in controversy. In this case, plaintiffs have claimed that the statute under which defendants have acted is pre-empted by the National Traffic and Motor Vehicle Safety Act of 1966. This Act is one which regulates commerce within the meaning of the statute. See 15 U.S.C. § 1397 (Supp. II 1966); Murphy v. Colonial Federal Savings and Loan Assoc., 388 F.2d 609, 614–615 (2d Cir. 1967). Where the claim is that an act which regulates commerce pre-empts a state statute, the case arises out of that act for purposes of section 1337. See American Federation of Labor v. Watson, 327 U.S. 582, 591, 66 S.Ct. 761, 90 L.Ed. 873 (1946). As a result, this Court has jurisdiction of this case regardless of the amount in controversy.

## II.

### MERITS OF PLAINTIFFS' CLAIM

The issue in this case is whether or not the State of Vermont may enforce its headlight performance standards against the plaintiffs' auxiliary light in view of the existence of the National Traffic and Motor Vehicle Safety Act of 1966 and the regulations issued pursuant thereto. The decision on this question requires, first, an examination of the pertinent Federal and state statutes.

Under 23 V.S.A. § 1247(a), the Commissioner of Motor Vehicles is given the power to test motor vehicle headlights that are submitted by a manufacturer for approval. A person may not operate

on the roads of the State of Vermont any motor vehicle which is equipped with a lighting device in excess of four candle power unless it is approved by the Commissioner. 23 V.S.A. § 1246. Although the Vermont statutes do not expressly state this, it can be safely assumed that the Commissioner has the power to refuse to pass in the periodic motor vehicle inspections any motor vehicle that is equipped in violation of section 1246. See 23 V.S.A. §§ 1001, 1222.

The National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1425 (Supp. II 1966) has the following purpose:

> Congress hereby declares that the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents. Therefore, Congress determines that it is necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce; to undertake and support necessary safety research and development; and to expand the national driver register.

15 U.S.C. § 1381 (Supp. II 1966).

Under this Act, the Secretary of Commerce is charged with the duty of promulgating federal motor vehicle safety standards for new motor vehicles. 15 U.S.C. § 1392(a) (Supp. II 1966). The burden of complying with these standards falls squarely on the manufacturer or distributor. The manufacturer or distributor is required to certify that each motor vehicle or item of motor vehicle equipment sold conforms to all applicable federal standards. 15 U.S.C. § 1403 (Supp. II 1966). Any manufacturer or distributor who sells a new motor vehicle that does not meet federal standards or who does not certify that it meets federal standards, may be enjoined from sale in violation of the Act and may be subject to a civil penalty. 15 U.S.C. §§ 1397–1399 (Supp. II 1966). If a motor vehicle or an item of motor vehicle equipment is found not to conform to federal standards, the manufacturer or distributor is required to repurchase the motor vehicle or equipment or furnish conforming parts to correct the defect. 15 U.S.C. § 1400 (Supp. II 1966). Only the performance of a motor vehicle or item of equipment when sold is covered by the Act. The operation of the vehicle by its owner is not so covered.

The Act has a number of provisions relating to the role of the states in motor vehicle safety. State representatives form part of the membership of a commission whose duty is to advise the Secretary of Commerce on motor vehicle safety standards. 15 U.S.C. § 1393 (Supp. II 1966). In addition, the Secretary is authorized to consult with the states in promulgating standards and development of inspection methods. 15 U.S.C. §§ 1392(f), 1396 (Supp. II 1966).

The Act specifically states that compliance with federal standards does not exempt one from common law liability. 15 U.S.C. § 1397(c) (Supp. II 1966). It also states that federal standards are not intended to apply to used motor vehicles at the present time. 15 U.S.C. § 1397(b)(1) (Supp. II 1966). Finally, the Act defines the role of the states with respect to new motor vehicles:

> (d) Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required

to comply with the otherwise applicable Federal standard.

15 U.S.C. § 1392(d) (Supp. II 1966). The above section raises the central issue in this case.

Chrysler claims that (1) there is a Federal motor vehicle standard in effect; (2) there is a State safety standard applicable to "Super Lite" which is not identical to the Federal standard; (3) these standards relate to the "same aspect of performance" of "Super Lite." As a result, Chrysler claims that under 15 U.S.C. § 1392(d) (Supp. II 1966), the Commissioner has no authority to continue his standard in effect with respect to "Super Lite" and that this Court should enjoin the Commissioner from interfering with the sale and distribution of vehicles equipped with "Super Lite."

The Federal safety standard which Chrysler alleges applies to "Super Lite" is Motor Vehicle Safety Standard No. 108, 23 C.F.R. § 255.21. (The Secretary has promulgated both an initial standard No. 108 which is presently in effect, and a final standard No. 108 to take effect January 1, 1969. For purposes of this case, there is no relevant difference between the initial and final standard). The standard is entitled "LAMPS, REFLECTIVE DEVICES, AND ASSOCIATED EQUIPMENT—MULTIPURPOSE PASSENGER VEHICLES [etc.] * * *." The purpose and scope of the standard is,

> This standard specifies requirements for lamps, reflective devices, and associated equipment, for signaling and to enable safe operation in darkness and other conditions of reduced visibility.

Safety Standard No. 108, S1.

Within standard No. 108, there are minimum lighting requirements for motor vehicles, but auxiliary headlamps such as "Super Lite" are not included. There is, however, one statement in standard No. 108 that relates to auxiliary lamps:

> No additional lamp, reflective device, or associated equipment shall be installed if it impairs the effectiveness of the required equipment.

Safety Standard No. 108, S3.1.2.

This Court is of the opinion that Federal motor vehicle standard No. 108 contains a standard as that term is used in section 1392(d) of the Act and that this standard is applicable to "Super Lite" as an additional lamp within the meaning of S3.1.2. Also, it is clear that the State's regulatory standard under which the Commissioner has acted in this case is not identical to that of the Federal Government. The real issue, therefore, is whether the State and Federal regulation in this case relate to the same aspect of performance of "Super Lite" as that term is used in the Act.

The phrase "same aspect of performance" is defined neither in the Act nor in any of its legislative history. There are some guides to the proper construction of the words, however, in the case law relating to pre-emption and in the legislative history of the Act.

There can be no doubt that 15 U.S.C. § 1392(d) (Supp. II 1966), the pre-emption section of the Act, is valid. When enacting laws pursuant to the Constitution, Congress may invoke the supremacy clause of the Constitution to the extent it sees fit and displace all or part of state regulations within the same field as the Federal enactment. Retail Clerks Int Ass'n, Local 1625, A.F.L.–C.I.O. v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). In determining the pre-emptive effect of Federal legislation, the intent of Congress must always control. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

With respect to the National Traffic and Motor Vehicle Safety Act of 1966, Congress has defined the extent of its invocation of the supremacy clause in section 1392(d). As a result, this Court must look to the words of the Act to determine its pre-emptive effect.

Although the Congressional history of the Act does not define with any preci-

sion the extent of its pre-emptive effect, it is significant.

Senate and House committee reports demonstrate that one of the primary purposes of the Act was to create uniform Federal safety standards for new motor vehicles and motor vehicle equipment.

The centralized, mass production, high volume character of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, but that they be uniform throughout the country.

S.Rep. No. 1301, 89th Cong., 2d Sess. 12 (1966), U.S.Code Cong. & Admin.News 1966, p. 2720.

Basically, this preemption subsection is intended to result in uniformity of standards so that the public as well as industry will be guided by one set of criteria rather than by a multiplicity of diverse standards.

H.R.Rep. No. 1776, 89th Cong., 2d Sess. 17 (1966). See also statement of Senator Magnuson, 112 Cong.Rec. 13585 (daily ed. 1966). The role of Federal regulation of new motor vehicle performance was intended to be pervasive with respect to state regulations.

While the contribution of the several States to automobile safety has been significant, and justifies securing to the States a consultative role in the setting of standards, the primary responsibility for regulating the national automotive manufacturing industry must fall squarely upon the Federal Government.

S.Rep. No. 1301, 89th Cong., 2d Sess. 4 (1966), U.S.Code Cong. & Admin.News, 1966, p. 2712.

This is a nationwide problem which requires forthright guidance and legislation at the national level.

H.R.Rep. No. 1776, 89th Cong., 2d Sess. 11 (1966). The Secretary of Commerce is authorized to create Federal standards where appropriate. 15 U.S.C. § 1392(a) (Supp. II 1966). He is not required to consider whether existing State standards in a particular area have been ineffective. In fact, in carrying out his duties, the Secretary has promulgated standards for basic equipment where it is clear that similar state regulations have been in effect for a long period of time. See, e.g., Safety Standards No. 108 (headlights, taillights, turn signals, etc.), No. 105 (brakes).

In light of this history, the conclusion must be reached that Congress has intended that the Federal Government assume the dominant role in the field of performance standards for new motor vehicles. Although the states retain their traditional position with respect to used motor vehicles, and particularly with respect to the operation and condition of automobiles and motor vehicle equipment, their role with respect to the performance characteristics of new motor vehicles is now subordinate to Federal control. See, 15 U.S.C. §§ 1393, 1396 (Supp. II 1966); S.Rep. No. 1301, 89th Cong., 2d Sess. 4 (1966).

Where Congress has enacted a pervasive regulatory scheme and demanded uniformity in its regulation, the Courts have been liberal in assuring that complementary or supplementary state regulation does not undermine the Federal purpose. See, e.g., Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). A good example of the protection the Courts have afforded Congressional desire for uniformity is the case of Campbell v. Hussey, 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961). In that case, the plaintiff claimed that the Federal Tobacco Inspection Act pre-empted the Georgia Tobacco Identification Act with respect to the labelling of plaintiff's grade of tobacco. The Federal Act required that the plaintiff's grade of tobacco be labelled with a blue ticket to indicate its characteristics—quality, color and length. The Act made no mention of additional labelling. The Georgia Act required that, in addition, the plaintiff's tobacco be given a white tag to indicate

its geographical origin. The Court held that Georgia's regulation was pre-empted because Congress intended to "[eliminate] all confusion by classifying tobacco not by geographical origin but by its characteristics." 368 U.S. at 300–301, 82 S.Ct. at 329. Where uniformity is involved, "complementary state regulation is as fatal as state regulations which conflict with the federal scheme." 368 U.S. at 302, 82 S.Ct. at 330.

This case is different from *Campbell* since here Congress has attempted to define the extent of its pre-emptive intent whereas in *Campbell* the Court had to infer pre-emptive intent from the purpose of the Federal Act and the nature of the regulated subject matter. *Campbell* does show, however, that in this case, a proper construction of the pre-emption provision should be reached in light of the overall Congressional purpose that uniformity of regulation be achieved. Cf. People of State of California v. Zook, 336 U.S. 725, 728–729, 69 S.Ct. 841, 93 L.Ed. 1005 (1949).

 It is this Court's conclusion that the pre-emption section of the National Traffic and Motor Vehicle Safety Act of 1966 must be broadly construed to accomplish the Federal purpose. The pre-emption section was worded in such a way that Federal standards would not be construed to preclude the State from its traditional role in regulating the use, condition and operation of motor vehicles and equipment. The State standards in this area do not relate to the same aspect of performance as the Federal safety standards under the Act. In addition, since the Secretary of Commerce was not required to create final Federal safety standards until January 31, 1968, the states continue to regulate, in part, performance characteristics of new motor vehicles and items of equipment until that time. See 15 U.S.C. § 1392(h) (Supp. II 1966).

 Finally, there may be instances where the Secretary does not choose to regulate because he feels that uniformity of regulation is not desired or necessary. Cf. Parker v. Brown, 317 U.S. 341, 353–354, 63 S.Ct. 307, 87 L.Ed. 315 (1943). State regulation is maintained in those areas. However, this is not a mandate for the Courts to construe narrowly the phrase "same aspect of performance" to allow State regulation. Absent a clear showing that the Secretary intended new motor vehicles or items of equipment to be left to state regulation either through their omission from Federal standards or through a statement to that effect, we should not find that state regulation is permissible. In other words, ambiguities must be construed in favor of uniformity. Cf. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775 (1959); Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955).

In applying these principles to this case, the first determination must be what "aspect of performance" the Federal and State governments are attempting to regulate. The Federal standard prohibits auxiliary lighting only when it will operate to impair the effectiveness of the required lighting. Although the thrust of this standard isn't clear, sufficient generalizations can be made about it to decide this case. The standard certainly attempts to prohibit lighting that will operate as a hazard to the driver of a motor vehicle so equipped since the driver will not obtain sufficient night vision when the efficiency of his lighting system is impaired. The standard should be construed as attempting to protect other users of the highway since in conditions of reduced visibility their safety on the roads may be jeopardized by the presence of a motor vehicle with a less than effective headlamp system.

It is difficult to classify the State standard in terms of an "aspect of performance." The approval statute under which the Commissioner has acted in this case sets down no standard on which the Commissioner may base his decisions. In the hearings, the Commissioner has voiced a broad range of objections to the use of automobiles

equipped with "Super Lite." These objections apparently relate to its safety with respect to other users of the road. For purposes of this decision, it can be assumed that the State standard, whatever it may be, is concerned with the effect of a headlight system on the safe use of the road by other vehicle operators.

■ When these two standards are compared in the light of the wording of the pre-emption section and the congressional purpose to create uniformity of regulation, it is this Court's conclusion that they do in fact relate to the "same aspect of performance." Therefore, the Federal standard has pre-empted State regulation with respect to "Super Lite" and the Commissioner may not interfere with the sale and distribution of motor vehicles equipped with "Super Lite."

In reaching this conclusion, no definition of "same aspect of performance" has been reached by this Court nor is this opinion intended to convey such definition. Whatever that phrase may mean, it is this Court's conclusion that when a broad Federal standard is promulgated with respect to an item of equipment, here auxiliary headlamps, and this standard relates to the effectiveness of that equipment in performing its function without hazard to the operator and other users of the roadway, a State standard aimed at safe use of that equipment with respect to others users of the highway is involved with the "same aspect of performance." Any attempt further to break down "aspect of performance" of equipment would destroy the uniformity the Act is intended to create. If a State role is intended with respect to regulation of an item of equipment, the burden must be upon the Secretary to specify exactly what he intends to leave to State regulation.

In the course of this litigation, evidence has been introduced to show that "Super Lite" does not impair the effectiveness of other required lighting equipment within the meaning of Federal Safety Standard No. 108 and similarly contrary evidence has been introduced. In disposing of this case, this Court makes no judgment on whether "Super Lite" in fact meets the Federal standard. That question is to be determined by the United States Department of Transportation in accordance with the provisions of the Act.

Also, in the course of this litigation, plaintiffs have made a motion to strike certain alleged improper material from the amicus curiae brief of the United States. Because none of the alleged improper material was used in reaching a determination in this case, the question is moot and no decision is necessary on the motion.