**CHRYSLER CORPORATION, and Chrysler Motors Corporation, Appellants,**

v.

**Robert W. RHODES, Fred L. Johnson, and Frederick L. Clarke, Jr., Appellees.**

**No. 7283.**

United States Court of Appeals First Circuit.

Heard May 16, 1969.

Decided June 26, 1969.

Rehearing Denied July 25, 1969.

Robert L. Ackerly, Washington, D. C., with whom W. Stranfield Johnson, Warren F. Farr, Lane McGovern, Boston, Mass., Sellers, Conner & Cuneo, Wash-

ington, D. C., and Ropes & Gray, Boston, Mass., were on brief, for appellants.

Norman E. D'Amours, Asst. Atty. Gen., with whom George S. Pappagianis, Atty. Gen., was on brief, for appellees.

William D. Ruckelshaus, Asst. Atty. Gen., and Morton Hollander and Leonard Schaitman, Attys., Dept. of Justice, on brief, for United States as amicus curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Chrysler Corporation brings this appeal seeking reversal of a decision by the federal district court for the District of New Hampshire which upheld the right of the state of New Hampshire to prohibit the sale of cars equipped with "Super Lite".[1] The State of New Hampshire notified all automobile dealers within its borders that cars equipped with "Super Lite" might not pass inspection, and at the same time the state requested Chrysler to submit "Super Lite" for pre-sale approval. Chrysler refused to do so and filed a complaint in the district court seeking declaratory and injunctive relief.

This appeal presents the narrow but important question of the extent to which state regulation has been preempted by the National Traffic and Motor Vehicle Safety Act of 1966, 15 U. S.C. § 1381 ff. Prior to the passage of this Act, the regulation of and responsibility for motor vehicle safety resided in the states. The federal legislation which is involved in this case was the culmination of the efforts of those concerned about the increasing carnage on the nation's highways. See 15 U.S.C. § 1381. In an effort to prevent further spiraling of the accident rate, the Congress directed the Secretary of Transportation to establish Federal Motor Vehicle Safety Standards. 15 U.S.C. § 1392(a).

In providing for federal regulation Congress was not unmindful of the role of the states. Section 103(d) of the act, 15 U.S.C. § 1392(d), squarely confronts the question before us—the scope of federal preemption of state motor vehicle safety standards.[2]

Reduced to its simplest terms, the import of § 103(d) is that, except in the case of vehicles purchased for their own use, the states are precluded from enacting nonidentical standards where there is a federal standard relating to the same aspect of performance in existence. This then presents the issue which is determinative of this appeal: whether there is an existing federal standard applicable to "Super Lite". This raises the fundamental question of the definition of a standard within the context of the Act.

In answering these questions we begin by outlining the provisions of the feder-

1. "Super Lite" is a supplementary light for night driving to be used with low beams. It is alleged to be superior to high beams in that it does not interfere with the visibility of oncoming drivers. The state of New Hampshire Department of Motor Vehicles stated that "Super Lite" was objectionable because it emitted blue rays. The issues presented by the appeal do not require, and we do not consider, an evaluation of the merits of "Super Lite".

2. "(d) Supremacy of federal standards; allowable higher standards for vehicles used by federal or state governments. "Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard." 15 U.S.C. § 1392(d).

al Act dealing with the promulgation of safety standards. We then discuss the specific safety standard (Motor Vehicle Safety Standard No. 108, 23 C.F.R. § 255.21), alleged to apply in this case.

We have observed, *supra*, that the act charges the Secretary of Transportation with the responsibility for establishing federal safety standards. The Secretary has delegated this responsibility to the Federal Highway Administration, and specifically to the National Highway Safety Bureau within that Administration. *See* Automotive Parts & Accessories Ass'n, Inc. v. Boyd, 407 F.2d 330 (D.C. Cir.1968). Congress has decreed that the federal standards are to be minimum standards, 15 U.S.C. § 1391(2), and that they are to be " * * * practicable, * * * meet the need for motor vehicle safety, and * * * be stated in objective terms." 15 U.S.C. § 1392(a).

In issuing safety standards, the Secretary is to consider whether a proposed standard is " * * * reasonable, practicable and appropriate for the particular type of motor vehicle or item of motor vehicle equipment * * *.", 15 U.S.C. § 1392(f) (3), and whether a proposed standard, " * * * will contribute to carrying out the purposes" of the act. 15 U.S.C. § 1392(f) (4). In making these determinations the Secretary may consult with the National Motor Vehicle Safety Advisory Council, the Vehicle Equipment Safety Commission, and other public agencies. 15 U.S.C. § 1392(f) (3); 15 U.S.C. § 1393(b). Moreover, the Secretary is to consider available motor vehicle safety data, including the results of tests which the Secretary is authorized to conduct under the Act. 15 U.S.C. § 1392(f) (1); 15 U.S.C. § 1395.[3]

Pursuant to the foregoing statutory scheme, a number of federal safety standards have been issued. Chrysler contends that one of these standards, Motor Vehicle Safety Standard No. 108, is applicable to "Super Lite", and therefore, that state regulation is prohibited by § 103(d) of the Act. Specifically, it is contended that both section 3.1.2 and section 1 of Regulation No. 108 are standards covering "Super Lite."

Standard No. 108 is directed at "lamps, reflective devices, and associated equipment". Section 1 of Standard No. 108 provides as follows:

> "*Purpose and scope.* This standard specifies requirements for lamps, reflective devices, and associated equipment, for signalling and to enable safe operation in darkness and other conditions of reduced visibility."

Standard No. 108 then proceeds to set forth its requirements in considerable detail.[4] These requirements take two forms: first, motor vehicles are required to have specific items of equipment; and, second, these enumerated items of equipment are subject to specific performance standards.

Despite its specificity with respect to numerous items of equipment, at *no point does* Standard No. 108 mention a category of supplementary lighting equipment such as would cover "Super Lite". Chrysler's first argument is

3. Orders establishing safety standards are subject to the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, (15 U.S.C. § 1392(b)), and judicial review for a person "adversely affected" by issuance of a standard is provided in the Court of Appeals. 15 U.S.C. § 1394(a).

Manufacturers must certify that vehicles or equipment comply with applicable standards, 15 U.S.C. § 1403, and the sale of non-complying vehicles or equipment is prohibited. 15 U.S.C. § 1397(a) (1). Violators of an applicable standard are subject to civil penalties of up to

$1,000, and to a district court injunction restraining violations of the act. 15 U.S.C. § 1398.

4. Standard No. 108 contains almost fifty subsections and four tables which set forth the details of the requirements. Table I which is concerned with multipurpose passenger vehicles of over 80 inches in width covers 16 categories of equipment and requires vehicles to have 29 specific items of equipment. Table III which deals with passenger cars covers 13 categories of equipment and requires 22 specific items of equipment.

that "Super Lite" is covered by implication in section 3.1.2 of Standard No. 108 which provides that:

> "No additional lamp, reflective device, and associated equipment shall be installed if it impairs the effectiveness of the required equipment."

This section, according to Chrysler, constitutes a standard, albeit a negative one, for "Super Lite". We disagree. In our view, the district court was correct in saying that a general prohibition cannot be transposed into authoritative and specific approval. Indeed, we read § 3.-1.2 as a recognition that Standard No. 108 does not extend to all categories of lighting equipment, and that being so, its purpose is to preclude the addition of equipment which is not covered if it would impair the effectiveness of required equipment.

Chrysler's second, and primary argument rests on its interpretation of the phrase "aspect of performance" found in § 103(d) of the Act. The contention is that "aspect of performance" corresponds to the purpose and scope section of a Motor Vehicle Safety Standard. *See* § 1, Standard No. 108, *supra*. Stated differently, Chrysler's argument is that § 1 serves as the standard for "Super Lite". That is, it urges that the declaration that Standard No. 108 contains requirements for lamps and associated equipment is itself a standard for such equipment and that the aspect of performance to which the standard is applicable is safe operation in darkness.

■ Not to recognize this as a standard, Chrysler argues, would require an infinite multiplicity of minutiae for each brand and model of equipment. But the overly general and the overly specific do not present any sort of realistic choice. The mere fact that the Secretary has

been able to progress far enough to issue qualitative and quantitative requirements for the most common categories of lighting equipment does not mean that all other kinds of lights are covered, simply because they also have the objective of enabling safe operation at night. Nor does the Secretary, to cover such, have to list "Super Lite" and perhaps a myriad of competitors. He has the realistic alternative, when, as, and if there is sufficient information to generalize, to describe the category and specify the common minimum requirements.

Chrÿsler points to Conference Report No. 1919, 89th Cong., 2d Sess. (1966) U.S.Code Cong. & Admin.News p. 2731 as support for its view.[5] Specifically, Chrysler contends that since the purpose of the Conference Committee's proposal was to preclude inadvertent preemption of state standards with respect to older vehicles, *see* n. 3 *supra, a fortiori* there was an intent to preempt state regulation with respect to new cars. But this asserted all-encompassing *sub silentio* preemption is contrary to the legislative history of the Act. The original bills, S. 3005 and H.R. 13228, would have preempted all state regulation where a federal safety standard was in effect. S. 3005 was subsequently amended to preclude only non-identical state regulation. S.Rep. No. 1301, 89th Cong., 2d Sess. p. 12 (1966). Finally, § 103(d) preempts only non-identical state regulation relating to the "same aspect of performance" of a vehicle or equipment.

■ There is, moreover, a more fatal fissure in Chrysler's analysis, and that is that the purpose and scope section of a federal standard is not by itself any standard at all. At best it informs as to the limits of the standard, S.Rep. No. 1301, 89th Cong., 2d Sess. (1966). It is

---

5. We note that the phrase "aspect of performance" was not added by the Conference Committee but had been inserted as an amendment to the House bill, H.R. 13228. H.R.Rep. No. 1776, 89th Cong., 2d Sess. p. 17 (1966). The Conference Committee added the words "with respect to any motor vehicle or item of motor vehicle equipment" and "of such vehicle

or item of equipment". The reason for this change was to insure that there would "not be any inadvertent preemption" of a state standard applicable to an older vehicle. We would only note that we do not readily see the connection between the addition and the reason for the addition.

not addressed to either the quantitative or the qualitative requirements of the standards.[6] Common sense and the Act itself require that federal standards are to be "practicable", "meet the needs of the Act", and "be stated in objective terms". 15 U.S.C. § 1392(a). The purpose and scope section of Motor Vehicle Safety Standard No. 108 is simply not a standard within the meaning ascribed to that concept by the Act. Not being a quantitative or qualitative measure at all, it provides no means for objective evaluation of a category of equipment mentioned only broadly and negatively.

Chrysler argues that to permit state regulation here will result in the federal standard becoming a maximum standard rather than a minimum standard as Congress intended. Chrysler may, of course, choose to treat the federal standard as a maximum in order to avoid the expense and annoyance of dealing with the states. But such a result is not inevitable. It may well be that public concern with automobile safety and competition from other manufacturers seeking to capitalize on that concern will stimulate continued searching for technological advances. In addition, at least two alternatives exist for accommodating innovation. A manufacturer could, as Chrysler failed to do here, exhaust avenues of state law.[7] Secondly, a manufacturer could seek to have an existing federal standard expanded to cover a new device. 15 U.S.C. § 1392(e).

Of course, experience may eventually show that the present balance between state and federal regulation is not achieving the desired results. But until the lesson is clear and Congress makes that judgment, this court cannot, and will not, deprive the states of a power which has been historically theirs and has been carefully altered by Congress in narrow terms.[8]

Affirmed.

## ON PETITION FOR HEARING

## PER CURIAM.

Chrysler Corporation brings this petition for rehearing asking that we reconsider our holding in Chrysler Corporation v. Rhodes, No. 7283 (1st Cir., June 26, 1969), that the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 ff., does not preempt New Hampshire's regulation of Chrysler's "Super Lite".

Chrysler makes a two-fold argument: first, it is contended that we did not define the phrase "aspect of performance", and second, that we did not give due consideration to the decisions in Chrysler Corp. v. Malloy, 294 F.Supp. 524 (D. Vt.1968), and Chrysler Corp. v. Tofany, No. 68–CV–359 (N.D.N.Y. March 13, 1969). We shall consider these points in the order raised above.

---

6. Semantically, the words "purpose", "scope", and "standard" have a distinct meaning and each plays a different role. "Purpose" states the ultimate objective. "Scope" indicates the kind of equipment with which the standard is concerned. "The standard" is a series of measures applicable to specific kinds of lighting and reflecting equipment.

Standard No. 108 provides an excellent illustration of this point. Its purpose is to promote safe operation in darkness. Its scope extends to lamps, reflective devices, and associated equipment. The standard then proceeds to define in detail both quantitative, see, e. g., § 3.1.1.5, and qualitative, see, e. g., Tables I, III requirements. See n. 4, supra.

7. It is not certain that "Super Lite" would have been rejected had it been submitted to the New Hampshire authorities for pre-sale approval.

8. We are aware that a contrary conclusion has been reached by two district courts. Chrysler Corp. v. Malloy, 294 F. Supp. 524 (D.Vt., December 30, 1968); Chrysler Corp. v. Tofany, (N.D.N.Y., CA No. 68–CV–359, March 13, 1969. With all respect to those courts, we decline to accept their reasoning. In both cases the court accorded what in our view was an unwarranted construction of § 103(d) of the Act. It is well-settled that where the state's police power is involved, preemption will not be presumed. See, e. g., Brotherhood of Locomotive Engineers v. Chicago, R. I. & Pacific R. R. Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966). To the extent that those courts relied upon any section of Motor Vehicle Safety Standard No. 108 as being applicable to "Super Lite", we disagree for the reasons stated in our opinion.

Chrysler asserts that we misrepresented its argument as to section 1 of Federal Motor Vehicle Safety Standard No. 108. For Chrysler contends that its position is not that section 1 is itself a standard, but that it defines the "aspect of performance" of standard no. 108. That being so, the argument continues, the New Hampshire regulations relate to the same "aspect of performance" as the federal standard, and are therefore preempted under § 103(d) of the Act, 15 U.S.C. § 1392(d).

■■■ We cannot accept the premise that "aspect of performance" is defined solely by section 1 of standard no. 108. While the purpose and scope section of a federal safety standard may well be the starting point in defining "aspect of performance", the inquiry cannot end there. In our view, resort must be had to the specific requirements and categories of the standard in order to give meaning to the vaguely-worded purpose and scope provision.[1]

■ At no point does standard no. 108 purport to cover a category of lighting equipment which would encompass "Super Lite". We therefore fail to see how the standard could be read to relate to any "aspect of performance" of "Super Lite".[2] We believe that our approach is consistent with both the language and the legislative history of § 103(d) of the Act, 15 U.S.C. § 1392(d). Nor does it do violence to the Congressional desire for uniformity. Whenever a federal standard deals with an item or category of equipment, non-identical state regulation is precluded and uniform regulation is assured. Such a result would follow if, for example, standard no. 108 were amended to provide coverage for a category of auxiliary lighting equipment which would encompass "Super Lite".

Acceptance of Chrysler's position might well be contrary to the central purpose of the Act—the promotion of safety on the nation's highways. To hold that the mere promulgation of a general purpose sought to be achieved by a federal safety standard would preempt all state regulation in a vaguely described area would result in a "no man's" land with respect to categories of equipment which the federal standard does not yet seek to regulate. On the other hand, should state regulation prove to be undesirable, preemption may easily be accomplished by the amendment of federal standards to extend their coverage.

Finally, Chrysler complains that we did not give sufficient consideration to the opinions in Chrysler Corp. v. Malloy, *supra*, and Chrysler Corp. v. Tofany, *supra*. We have subjected those decisions to careful analysis, and with all respect to those courts, we cannot accept their reasoning. In Chrysler Corp. v. Tofany, *supra*, the district court struggled with the phrase "aspect of performance" but did not reach a conclusion, and in Chrysler Corp. v. Malloy, *supra*, the court expressly disclaimed any attempt to define this critical language. Thus, neither case resolved the issue which forms the basis for this petition.[3]

Petition for rehearing denied.

---

1. This in fact appears to be the approach adopted in Chemical Specialties Manufacturers Association, Inc. v. Conner, CA No. TCA–1422 (N.D.Fla. July 23, 1968).

2. We reaffirm our belief that section 3.1.2 of standard no. 108 is not a standard for "Super Lite". As we stated in our opinion, section 3.1.2 recognizes that the federal standard does not cover all categories of lighting equipment.

3. We are impelled to add that the stridency of the petition calls for comment. Vigorous contention on hard fought issues in important cases is part of the life of both lawyers and judges. But effective advocacy is exceeded, we think, by such charges as that the court "skirts [a] central issue" with "apparently studied silence". Nor is petitioner's case advanced by other personal references, such as asserting that a district judge whom we did not choose to follow is "experienced and respected". We do not doubt that he is, but we do not approve of such argumentation.