The Attorney General is in receipt of your request for an opinion wherein you ask, substantially, the following questions: Is 47 O.S. 601 [47-601] (1971), the Oklahoma Brake Fluid Act, preempted by the Federal Brake Fluid Act as shown in the National Traffic and Motor Vehicle Safety Act of 1966,15 U.S.C.A. 1381 et seq? If the state law is preempted: 1. Can the State require a license before a sale is made by a manufacturer to a retailer, or is it limited to licensing of the retailer who makes the sale to the ultimate consumer? 2. Can the State require testing to insure the quality of the brake fluid before the product is marketed by the manufacturer, or can the State make a test after the product is on the market and sold to the consumer, and if it does not pass the test, require the said product to be removed from the market ? Title 47 O.S. 601 [47-601] et seq. (1971) is known as the Oklahoma Brake Fluid Act which defines "brake fluid" and contains rules pertaining to the adulteration, misbranding, minimum specification, inspection, fees and enforcement thereof. Title 15 U.S.C.A. 1392(d) states as follows: "Whenever a federal motor vehicle safety standard established under this subchapter is in effect, no state or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle equipment, any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the federal standard. Nothing in this section shall be construed to prevent the federal government or government of any state or political subdivision thereof, from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable federal standard." Congress had explicitly provided for preemption of state standards, and the only issue is whether 47 O.S. 12-307 [47-12-307] and 47 O.S. 12-308 [47-12-308] (1971), are thereby made unenforceable. Chrysler Corporation v. Rhodes, 416 F.2d 319
(1st Cir. 1969) and Chrysler Corporation v. Tofany,419 F.2d 499 (2nd Cir. 1969) are cases which have interpreted 1392 (d), a three prong test for preemption of state motor vehicle safety standard has been applied. The elements are: 1. A state safety standard which is not identical to or more demanding than, the federal standard; 2. Both state and federal standards must apply to the same items or category of equipment; 3. Both standards must apply to the same aspect of performance. Title 47 O.S. 12-308 [47-12-308] (1971) satisfies each element of the preemption test. This provision states that all hydraulic brake fluid "sold, bartered, offered for sale, or held with intent to sell within this state" must meet the minimum specification of SAE 70-R-1. That standard is based on specifications adopted by the society of automobile engineers in 1971, which differs in some respects from specifications adopted in 1976. The later is the basis for the Federal Motor Vehicle Safety Standard (FMVSS) No. 116. For example, under 47 O.S. 12-308 [47-12-308] (1971) the boiling point for hydraulic brake fluid is 374F while the FMVSS 116 requires a minimum boiling point of 401F. The standards are not identical with the state standard being less stringent. Therefore, the first element is satisfied. Obviously, the second element is satisfied because both the federal and the state standards concern hydraulic brake fluid and therefore address the same item. Despite the restrictive interpretation given the second element of the test in Chrysler Corporation v. Rhodes, supra, where a specific and unique item of additional lighting equipment was held not to be in the same category of equipment addressed by a federal safety standard which mentioned additional lighting equipment, it would defy logic and sense to assert that hydraulic brake fluid is not the item addressed by both the Oklahoma and federal standards here at issue. The third requirement of the preemption test under 1392d is that the federal and state motor vehicle safety standards must relate to the same aspect of performance. That requirement is met when FMVSS 116(2) and 47 O.S. 12-308 [47-12-308] (1971) are compared. Section 2 of FMVSS 116 states that the federal brake fluid standards were adopted "to reduce failures in the hydraulic braking systems which may occur because of the manufacture or use of improper or contaminated fluids." No specific purpose, or "aspect of performance," is articulated by the Oklahoma brake fluid statutes; but the fact that 47 O.S. 12-308 [47-12-308] incorporates specifications designed by the society of automobile engineers, and the fact that those specifications are simply an earlier version of the 1976 specifications which guide the federal brake fluid standards, indicate that both the federal and state standards address the same aspect of performance. It would be wrong to follow the results reached in the Chrysler cases, supra, which held that on extremely narrow interpretation of the preemption test is appropriate and therefore held state motor vehicle safety standards not to be preempted. In those cases the State standards had been recently adopted and it was apparent that the interests of New York and Vermont in banning the use of "superlite" were quite different from the federal interest in requiring that additional lighting equipment not impair the functioning of standard lighting equipment. Chrysler Corporation v. Tofany, supra. No such distinction can be made between the interest of the Oklahoma Legislature in enacting 47 O.S. 12-308 [47-12-308] (1971) and the federal interest in FMVSS 116; for no legislative history exists to support the distinction. Therefore, all brake fluid standards embodied in 47 O.S. 12-308 [47-12-308] (1971) which are not identical to standards set out in FMVSS 116, or not more rigorous than the federal standards, are preempted by FMVSS 116 under the authority of 15 U.S.C.A. 1392d. Title 47 O.S. 12-307 [47-12-307] (1971) deals with misbranding of hydraulic brake fluid. It requires that brake fluid containers (1) not bear misleading information. (2) That "if in package form," it must bear "the name and place of business of the manufacturer, packer, seller or distribution, . . . .," (3) and that the contents be explained by weight and measure, (4) and instructions for dilution accompany the product if dilution is necessary. Clearly, these requirements serve the purpose of informing purchasers and are aimed at providing purchasers the means by which to make an informed choice. As well, the information required by 47 O.S. 12-307 [47-12-307] (1971) has the effect of protecting the public from substandard products. These purposes and objectives are manifested in FMVSS 116, 2.2.1 and 2.2.2. The requirements for packaging and labeling brake fluid under the federal standard are more exacting, however. They require a statement for example, that the brake fluid conforms to federal standards of performance; and they require specific instructions and warnings for the use of the product to be on the container or package. Thus 2.2.1 and 2.2.2 of FMVSS 116 encompass the purpose of 47 O.S. 12-307 [47-12-307] (1971), but the standards are more specific, and they go further in what they require for conformance. Therefore, 47 O.S. 12-307 [47-12-307] (1971) also satisfies each element of the preemption test and cannot be enforced. The National Safety Act,15 U.S.C.A. 1381 et seq., establishes a comprehensive system of enforcing federal motor vehicle safety standards. The touchstone of its enforcement scheme is self-certification by manufacturers that their equipment and products comply with federal safety standards. That is, their products which are covered by a federal standard are not required to be approved by a federal agency (here, the NHTSA) as a condition precedent to marketing. Manufacturers simply certify compliance after the required testing, laboratory reports, and other data are submitted. If equipment is later discovered to be substandard or not in compliance corrective action is sought by the NHTSA; failing that, the problem is referred to the Attorney General. Remedies enforced under the Safety Act include substantial penalties and recall campaigns. On the other hand, enforcement of Oklahoma brake fluid standards requires that each brand or type of brake fluid be approved by the Fuel Inspection Division before it is marketed. Title 47 O.S. 12-309 [47-12-309] (1975). That section also requires payment of a $100 application fee and an annual renewal fee of not more than $100 to be paid before the product is certified and marketed. Anyone who does not comply and thereby violates the brake fluid statutes is subject to a fine of from $300 to $500 for each offense, imprisonment up to ninety days, and is guilty of a misdemeanor, 47 O.S. 12-315 [47-12-315] (1971). A comparison of the state and federal schemes of enforcement manifests very (different approaches. This difference has been the subject of litigation in the District Court for the Middle District of Pennsylvania, cited below, and raises the important question of whether the state scheme of enforcement is implicitly preempted by the National Safety Act. The National Safety Act, supra, does not expressly preempt State enforcement of State Standards at the Manufacturer/distributor level. However, the fact of comprehensive federal legislation in the field of motor vehicle safety requires examination to determine whether State enforcement procedures in the same area can operate without "impairing the federal superintendence of the field." See Florida Lime Avocado Growers, Inc. v. Paul,10 L.Ed.2d 248 at 257, Perez v. Campbell, 29 L.Ed.2d 333, Federal Power Commission v. Corporation Commission of State of Oklahoma, 362 F. Supp. 522, Affirmed39 L.Ed.2d 863; If federal superintendence is impaired, and if the other criteria for implied preemption are met, then Oklahoma enforcement procedures cannot be given effect at the same points at which the federal scheme of enforcement operates — i.e., the manufacturer/distributor level. See 15 U.S.C.A. 1397(b) (1), and Truck Safety Equipment Institute v. Robert Kane, Attorney General, Commonwealth of Pennsylvania, Consumers Products Safety Decisions, P. 60546.* The Truck Safety case, supra, determined that the enforcement procedure of Pennsylvania was preempted by the federal procedure at the manufacturer/distributor level. The State procedure at issue required, like Oklahoma's brake fluid enforcement procedure, that equipment be approved prior to marketing; the procedure of Pennsylvania, in fact, followed along the lines of that of Oklahoma. See Truck Safety, at 60549. The rationale of the decision was that the National Traffic and Motor Vehicles Safety Act, evidenced congressional intent to preempt state enforcement procedures at the manufacturer/distributor level and leave the statutes to enforce their standards "at the consumer level by regular periodic inspections." Truck Safety case, supra, at p. 60552. This conclusion is solidly grounded in the case law dealing with implied preemption. Florida Lime, supra. Section 1397(b)(1) of the Federal Act limits the federal enforcement to the first sale of the vehicle or product in question and the Senate Committee on Commerce at page 12 (as cited in Truck Safety, supra, p. 60553) stated that the effect of the federal act of state law is to allow statutes to play a "significant role in the vehicle safety field by applying and enforcing standards over the life of the car." The report of the House Committee states the purpose of the bill is to "provide for a coordinated national safety program . . . ." As explained above, the National Safety Act sets out a comprehensive and pervasive scheme of enforcement that is based on self-certification by manufacturers and distributors, and it appears that Congress intended the standards to which those parties are bound should be uniform throughout the county. (See Section 1392(d) of the Act) . Therefore, the enforcement provisions of the Oklahoma brake fluid statutes impair the operation of federal enforcement to the extent that the former requires state approval as a condition precedent to marketing of brake fluid in Oklahoma. To conclude that state enforcement at the manufacturer/distributor level is not preempted could put those parties in the anomalous position of complying with federal standards but being in violation of Oklahoma law. For a manufacturer/distributor would violate Oklahoma law by mere failure to submit a sample of its brake fluid to the Fuel Inspection Division for testing, or by failure to pay the application for renewal charge as provided by 47 O.S. 12-309 [47-12-309] (1975). One of the objectives of the National Safety Act is uniformity, a "coordinated National Safety Program." The prior approval method of enforcement in Oklahoma stands as an obstacle to uniform enforcement because it subjects manufacturers/distributors to expense, delay and inconvenience which the federal method of self-certification precludes. It is therefore, the official opinion of the Attorney General that 47 O.S. 601 [47-601] (1971), THE Oklahoma Brake Fluid Act is preempted by the federal act to the extent that federal standards set out in FMVSS 116 are more stringent than the standards embodied in 47 O.S. 12-308 [47-12-308] (1971). The State may not require testing of the product, a license or impose a fee at the manufacturer/distributor level. The State may, however, impose a higher standard on the product, and is not precluded from it remedy of recall or removal of the product should permissible state testing show the product does not comply with a higher state safety standard. *This case has not been placed in the advance sheets of the Federal Supplement. (VICTOR G. HILL, JR.) (ksg)