**Audrey M. JORDAN, et al., Plaintiffs,**

v.

**PACCAR, INC., Defendant.**

**No. 90–CV–600.**

United States District Court,
N.D. Ohio, E.D.

May 13, 1992.

---

Howard A. Schulman, Schulman & Schulman, Cleveland, Ohio, for plaintiffs.

Ernest W. Auciello, Jr., Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, Harry T. Quick, Lawrence Kevin English, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendant.

ORDER

SAM H. BELL, District Judge.

Presently before the court in the above-captioned cause is a motion by defendant Paccar, Inc., to exclude from trial on plaintiffs' claim of defective truck cab-roof design any and all evidence relating to truck cab design and manufacture, other than evidence of compliance or noncompliance with applicable federal statutes and regulations. Defendant contends that provisions of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. 1381, 1391–1431 (the Safety Act), and, *inter alia,* the federal motor vehicle safety standards relating to "occupant crash protection", 49 C.F.R. 571.208, have preempted state law in the area of occupant crash protection generally, and truck rollover protection specifically, and thus preclude a state from regulating in the area of truck cab-roof crashworthiness, and preclude plaintiffs from maintaining a state cause of action for defective truck cab-roof design beyond those design requirements specified in federal law.

*Federal Preemption Standard*

The question of whether state law in a given area is preempted by federal law requires an examination of congressional intent. *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Congress can manifest an intent to preempt state law in a given area in one of three ways:

... Congress expressly may define the extent to which its enactments pre-empt state law. ... In the absence of explicit statutory language, however, Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose may properly be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where "the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." ... Finally, even where Congress has not entirely displaced state regulation in a particular field, state law is pre-empted when it actually conflicts with federal law. Such a conflict will be found " 'when it is impossible to comply with both state and federal law, ... or where the state law stands as an obstacle to the accomplish-

ment of the full purposes and objectives of Congress ...'"

*Id.*, at 299–300, 108 S.Ct. at 1150–1151 (citations omitted). Federal regulations may also displace state law: "A pre-emptive regulation's force does not depend on express congressional authorization to displace state law." *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153–54, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Smallwood v. Office of Thrift Supervision*, 925 F.2d 894, 897 (6th Cir. 1991). The imposition of damages under a state tort law claim is a form of state regulation, and is thus also subject to federal preemption. See *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

### The Safety Act and Regulations

The express and primary purpose of the Safety Act is "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. 1381; See *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1122 (3rd Cir.1990), cert. denied —— U.S. ——, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *Heath v. General Motors Corp.*, 756 F.Supp. 1144, 1148 (S.D.Ind.1991). As recognized in these cases, a secondary purpose of the Act was to establish nationwide uniformity of safety standards, as evidenced by pertinent language in 15 U.S.C. 1392(d):

> Whenever a Federal motor vehicle standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

The force of this "preemption clause" is blunted, however, by an apparently conflicting provision of the Act, the "savings clause" of 15 U.S.C. 1397(k): "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." The conflict between these

provisions has been a threshold issue in most cases that have dealt with the question of federal preemption in this area.

Pursuant to the authority granted by 15 U.S.C. 1392(a), the Secretary of Transportation has promulgated numerous federal motor vehicle safety standards, as set forth in subpart B of 49 C.F.R. 571. While there are roof crush-resistance requirements for, e.g., passenger cars, 49 C.F.R. 571.216, there is at present no federal safety standard that specifically applies to the safety feature at issue in the present case, the rollover strength of cab-roofs of "heavy" trucks of the type involved here. However, 49 C.F.R. 571.208, which sets forth requirements for "occupant crash protection", and which deals primarily with requirements for active and passive passenger restraint systems—i.e. seat belts and air bags—is made expressly applicable to trucks of the type involved in this case. It is this safety standard that has engendered the bulk of cases that have dealt with the question of preemption by the Safety Act of state regulations or state common law claims.

### The Air–Bag Cases

We have found no cases that deal with the specific issue of federal preemption of a state claim of defective truck cab-roof design due to the failure to install rollover protection devices, nor do the parties cite any. Defendant contends, however, that its position is supported by analogy to and extension of the holdings in cases that have dealt with the question of federal preemption of state claims regarding other aspects of motor vehicle safety, most predominantly those cases involving claims of design defect for failure to install air-bag protection devices. See *Pokorny, supra; Taylor v. General Motors Corp.*, 875 F.2d 816 (11th Cir.1989), cert. denied 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Kitts v. General Motors Corp.*, 875 F.2d 787 (10th Cir.1989), cert. denied 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); *Wood v. General Motors Corp.*, 865 F.2d 395 (1st Cir.1988), cert. denied 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); *Heath, supra; Dallas v. General*

Motors Corp., 725 F.Supp. 902 (W.D.Tex. 1989); *Kolbeck v. General Motors Corp.*, 702 F.Supp. 532 (E.D.Pa.1988); *Staggs v. Chrysler Corp.*, 678 F.Supp. 270 (N.D.Ga. 1987); *Murphy v. Nissan Motor Corp.*, 650 F.Supp. 922 (E.D.N.Y.1987); *Baird v. General Motors*, 654 F.Supp. 28 (N.D.Ohio 1986); *Cox v. Baltimore Cty.*, 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo.1986).

At issue in these cases is the preemptive effect of the provisions of 49 C.F.R. 571.-208. While the specific application of this regulation varies with the type and year of vehicle, the regulation generally allows motor vehicle manufacturers a choice between several options for installing passenger restraint devices, one of which would include air-bag devices.

A handful of air-bag cases have found express preemption of state claims for failure to install air bags in the language of the general preemption clause of 15 U.S.C. 1392(d). See *Cox, supra; Vanover, supra*. However, the better view, and the majority rule, is that the general preemption clause does not expressly preempt such claims because it does not explicitly mention common law claims, and because the savings clause of 15 U.S.C. 1397(k), when considered in combination with the preemption clause, makes Congress's intent, at the very least, ambiguous with respect to state common law claims. See *Heath, supra*, at 1146–47. The air-bag cases that have directly commented or ruled on the issue have also rejected the claim, raised by defendant here, that there is implied preemption of such claims based on the alleged demonstrated intent of Congress to "occupy the field" of motor vehicle safety. *Pokorny, supra*, at 1122, fn. 7; *Kolbeck, supra*, at 536, fn. 6; see also *Chrysler Corp. v. Rhodes*, 416 F.2d 319, 325 (1st Cir.1969); *Garrett v. Ford Motor Co.*, 684 F.Supp. 407, 409 (D.Md.1987).

Nevertheless, the majority of air-bag case have found claims of design defect for failure to install air-bag devices to be preempted on the basis of actual conflict with the federal standards. The general rationale underlying these holdings is that allowing a state claim that would hold a manufacturer liable for failing to "choose" to install air bags effectively negates the exercise of the option specifically provided under the federal scheme, and thus interferes with the purposes and objectives of federal law in this area. See, e.g., *Pokorny, supra*, at 1124–25; *Taylor, supra*, at 827; *Baird, supra*, at 32.

*Defendant's Arguments*

Paccar apparently concedes that there is no express preemption of plaintiffs' claim under the Safety Act, as it offers no argument on the point. Rather, Paccar contends that plaintiffs' claim is impliedly preempted by virtue of demonstrated intent to occupy the entire field of truck occupant safety and/or occupant crash protection in general, and by virtue of actual conflict with the regulatory provisions of 49 C.F.R. 571.208.

Paccar contends that Congress manifested its intent to occupy the entire field through the Safety Act and through 49 U.S.C.App. 2514(a), which authorizes the Secretary of Transportation to study the problem of crash protection for truck occupants, and to submit a report of findings to Congress. Paccar quotes extensively from various reports and studies on the matter by the National Highway Transportation Safety Administration (NHTSA) and its subcommittees which, in short, show that the problems of truck occupant protection, and specifically rollover protection, are still under investigation, with no regulation relevant to the present claim yet in effect. Paccar argues that this ongoing investigation demonstrates an intent on the part of Congress and NHTSA to someday occupy the field, and that allowing plaintiffs to proceed with the present claim would interfere with the establishment of regulations in this area.

Paccar further contends that the present claim is in actual conflict with the provisions of 49 C.F.R. 571.208, the "occupant crash protection" regulation relating to passenger restraint systems, which was at issue in the air-bag cases, because the claim relates to the "same aspect of performance" covered by this regulatory pro-

vision. Paccar asserts that the absence of regulation in this area has the same preemptive effect as would the actual establishment of a regulation, citing in support the recent cases of *Mowery v. Mercury Marine Division of Brunswick Corp.*, 773 F.Supp. 1012 (N.D.Ohio 1991), and *Myrick v. Fruehauf Corp.*, 1:91–CV–0465–JOF, slip op. (N.D.Ga. Mar. 26, 1992).

Paccar's arguments fail to be persuasive for several reasons. First, it must be noted that 15 U.S.C. 1392(d) by its own language limits its preemptive scope to regulations that are *established* and *in effect.* While Congress clearly has the power to preempt state law in the area of motor vehicle safety as it deems necessary and proper, the language of this provision does not evidence an intent to occupy the entire field to the exclusion of state law. It demonstrates instead the intent to allow identical state law in areas in which it has acted, and compatible or complementary state law in areas in which it has not. See *Garrett, supra,* at 409; *Welsh v. Century Products,* 745 F.Supp. 313, 319 (D.Md.1990); both citing *Rhodes, supra.* The limiting language of the preemption clause, in tandem with the savings clause and its express preservation of common law liability, dictates against finding any intent to occupy the field.

██ Paccar does not attempt to counter the reasoning of the cases cited earlier which rejected claims of Congress's intent to occupy the field in view of the savings clause, nor does it address or even acknowledge the existence of the savings clause anywhere in the course of its lengthy brief. Instead, it goes to great lengths to argue that NHTSA has demonstrated the intent to occupy the field by virtue of its extensive and ongoing investigations into the problems of truck occupant protection. While an administrative agency may in certain instances act to preempt state law absent express congressional authorization to do so, such action can be taken only if it is within the scope of authority delegated to it by Congress. *Fidelity Federal, supra,* 458 U.S. at 154, 102 S.Ct. at 3023.

... [A] federal agency may pre-empt state law only when and if it is acting within the scope of its congressionally delegated authority. This is true for at least two reasons. First, an agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it. Second, the best way of determining whether Congress intended the regulations of an administrative agency to displace state law is to examine the nature and scope of the authority granted by Congress to the agency.... An agency may not confer power upon itself. To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant the agency the power to override Congress. This we are both unwilling and unable to do.

*Louisiana Public Svc. Comm'n v. FCC,* 476 U.S. 355, 374–75, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). In similar manner, to hold that a state common law claim is preempted by virtue of an administrative agency's intent to occupy the field, where Congress has demonstrated the opposite intent, would be to allow that agency power far beyond that granted to it by Congress.

Paccar's alternative argument, that plaintiffs' claim is impliedly preempted by virtue of actual conflict with the provisions of 49 C.F.R. 571.208, is also without merit. Paccar acknowledges that in order to prove preemption it must establish 1) that the theory of recovery advanced by this action is directed at the "same aspect of performance" as the federal safety standard, *and* 2) that the theory of recovery is of sufficiently general applicability that a successful tort suit would be equivalent to a state regulation. *Wood, supra,* 865 F.2d at 417–18. While it may be arguable that plaintiffs' claim satisfies the second step of this test, we need not reach that question, as Paccar fails completely to establish that plaintiffs' claim satisfies the first step.

Paccar contends that the aspect of performance to which plaintiffs' claim is directed is "occupant crash protection",

which is the general subject of 49 C.F.R. 571.208, as stated in its caption and "scope" section. However, Paccar's broad application of "aspect of performance" finds no support in case law. The evidently uniform view is that this term is to be narrowly defined to promote the purposes of the Safety Act. *Pokorny, supra,* 902 F.2d at 1126; *Wood, supra,* 865 F.2d at 418; *Chrysler Corp. v. Tofany,* 419 F.2d 499, 509–10 (2d Cir.1969); *Rhodes, supra,* 416 F.2d at 325. See also *Crowe v. Fleming,* 749 F.Supp. 1135 (S.D.Ga.1990); *Welsh, supra; Garrett, supra.* In establishing the above two-step analysis, the First Circuit in *Wood* emphasized that "aspect of performance" is to be narrowly defined, as it had been in that court's earlier decision of *Chrysler v. Rhodes, supra.* In that case, the court observed:

> Acceptance of Chrysler's position might well be contrary to the central purpose of the Act—the promotion of safety on the nation's highways. To hold that the mere promulgation of a general purpose sought to be achieved by a federal safety standard would preempt all state regulation in a vaguely described area would result in a "no-man's" land with respect to categories of equipment which the federal standard does not yet seek to regulate. On the other hand, should state regulation prove to be undesirable, preemption may easily be accomplished by the amendment of federal standards to extend their coverage.

*Rhodes, supra,* at 325. Accordingly, rather than determining the "aspect of performance" by reference to the vague and general "purpose" or "scope" language of the particular regulation, it should be determined by looking to the specific requirements and categories of the standard; it is only when a federal standard deals specifically with a particular item or category of equipment that 15 U.S.C. 1392(d) becomes operative, and non-identical state regulation preempted. *Id.*

This narrow construction of "aspect of performance" comports with a general principle of preemption analysis summarized by the Supreme Court in *Bethlehem Steel Co. v. New York Labor Relations Bd.,* 330 U.S. 767, 774, 67 S.Ct. 1026, 1030, 91 L.Ed. 1234 (1947):

> ... [W]hen federal administrative regulation has been slight under a statute which potentially allows minute and multitudinous regulation of its subject, ... or even where extensive regulations have been made, if the measure in question relates to what may be considered a separable or distinct segment of the matter covered by the federal statute and the federal agency has not acted on that segment, the case will be treated in a manner similar to cases in which the effectiveness of federal supervision awaits federal administrative regulation, ... The states are in those cases permitted to use their police power in the interval. (Citations omitted.)

Notwithstanding the broad language of the caption and the "scope" section of 49 C.F.R. 571.208, the items or categories of equipment primarily and actually covered by that regulation are "passenger restraint systems". This clearly is not the same aspect of performance at issue in the present case.

Drawing upon its erroneous designation of the aspect of performance involved herein, Paccar strains the analogy to the airbag cases by contending that to allow this state claim, which might effectively require truck manufacturers to design trucks with cab-roofs that will not collapse and crush the occupants in the event of a rollover, would interfere with the exercise of its "option" under the federal scheme to do nothing more toward occupant crash protection than to install passenger restraint devices. We find nothing in the relevant statutes, legislative history, regulations, or case law from which the existence of such an "option" can be reasonably derived. The option granted to manufacturers by 49 C.F.R. 571.208 is a limited choice among various *active* means of achieving the goals of safety for its particular aspect of performance—not, as defendant seems to argue, an option to be passive and to ignore the safety features of other aspects of performance until forced to act by federal regulation.

Paccar also asserts that the absence of federal regulation in the area of truck rollover protection demonstrates an administrative determination that regulation in this area is, i.e., unwarranted or undesirable. In certain situations, the absence of federal regulation in a particular area may act to preempt state regulation in that area as well. *Arkansas Elec. Coop. Corp. v. Arkansas Public Serv. Comm'n*, 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1 (1983). Such is the case where there is "an authoritative federal determination that the area is best left unregulated", *Id.*, or where the area is "designed to be free" of any regulation, *NLRB v. Nash–Finch Co.*, 404 U.S. 138, 144, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971), citing *Garner v. Teamsters Union*, 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953).

In support of this argument, Paccar cites two recent decisions: *Mowery v. Mercury Marine, Div. of Brunswick Corp.*, 773 F.Supp. 1012 (N.D.Ohio 1991), and *Myrick v. Fruehauf Corp.*, 1:91–CV–0465–JOF, slip op. (N.D.Ga. Mar. 26, 1992). Although these cases may be in keeping with the above rule regarding preemption by absence of regulation, they are inapplicable to the present case.

In *Mowery*, the court held that a common law claim against a boat manufacturer for failure to install propeller guards was preempted, even in the absence of a specific federal regulation regarding such. However, in that instance federal regulations *expressly* preempted state regulation in the area of boat and equipment safety standards, based on the overriding need for uniformity of safety regulations for vessels moving in interstate commerce. *Mowery, supra*, at 1014. Moreover, the Coast Guard, to which had been delegated the authority to establish regulations in the area, had made a specific determination not to require propeller guards, i.e., an affirmative decision not to regulate in this area. *Id.*, at 1016.

In *Myrick*, the court found preemption of a claim against a truck manufacturer for failure to install anti-lock brakes in the absence of a specific federal requirement for such equipment. At issue in that case, however, were the provisions of 49 C.F.R. 571.121, which provide specific standards and requirements for virtually all aspects of truck braking systems. *Myrick, Id.*, at 9. While anti-locks brakes had been originally required for trucks, the Department of Transportation made the affirmative decision to amend the regulation and to suspend such requirements in the interests of *promoting* safety, at least until such devices had been improved and subjected to further testing. *Id.* Thus, a state common law standard that required anti-lock devices would directly conflict with the purpose behind the amendment, as well as the overriding purpose of the Safety Act. *Id.*

The distinctions between these cases and the present one should be clear. Paccar fails to present any evidence of an affirmative, ultimate determination not to regulate in the area of truck rollover protection, nor anything that indicates that such regulation is either unwarranted or undesirable, or inimicable to the goals of safety. Paccar points out that the NHTSA declined to extend the rollover protection requirements of 49 C.F.R. 571.216 to heavy trucks, but this indicates only that the problems of formulating such design requirements for heavy trucks are distinct and separable issues—not that such requirements are unnecessary. Indeed, all indications from the various administrative documents provided and/or cited by defendant are that truck rollover protection is of major administrative concern, and that it continues to be the focus of research and investigation.

Apparently in the alternative, as the argument implicitly concedes that there is no final determination not to regulate in this area, Paccar contends that allowing the present claim would somehow interfere with NHTSA's ability to ultimately establish appropriate regulations in the area of truck rollover protection. This court fails to see how the present claim would interfere in any way with NHTSA's ability to establish regulations, or with the ability of truck manufacturers to comply with such regulations once established.

552

Though its requirements may be ultimately preempted once specific federal standards are established, state regulation during the interim period between congressional mandate and administrative action, in an area where no regulation is established and in effect, is crucial to ensuring and promoting the goal of highway safety. To hold that the present claim is preempted because the NHTSA may someday establish regulations regarding truck rollover protection would effectively leave today's truck occupants in a state of limbo, with neither protection by regulation nor remedy by law. This most certainly was not the intent of Congress in establishing the Safety Act. *See also Larsen v. General Motors Corp.*, 391 F.2d 495, 506 (8th Cir.1968).

*Conclusion*

The court finds that plaintiffs' claim of defective truck cab-roof design for failure to install rollover protection devices is not preempted by the Safety Act or regulations promulgated thereunder. As this is the sole stated basis for defendant's motion to exclude evidence in support of such claim, defendant's motion is denied.

IT IS SO ORDERED.