**In re ESTATE OF Garland Fredderick WELLS, Deceased, Sametrius Wells, Individually and as Next Friend of Denzel Wells, a Minor Child, and as Administratrix of the Estate of Garland Fredderick Wells, Appellant,**

v.

**GREAT DANE TRAILERS, INC., Appellee.**

No. 14–97–00596–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 28, 1999.

Rehearing Overruled Dec. 2, 1999.

Thomas K. Brown, Houston, for appellants.

Robert M. Schick, Demetrios Anaipakos, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and SEARS.*

## OPINION

PAUL C. MURPHY, Chief Justice.

Appellant, Sametrius Wells, individually and as next friend of Denzel Wells, a minor child, and as adminstratrix of the estate of Garland Fredderick Wells ("Wells"), appeals the rendition of summary judgment in favor of appellee, Great Dane Trailers, Inc. ("Great Dane"). After the decedent, Garland Fredderick Wells, was killed in an automobile accident, Wells sued Great Dane alleging in her first amended original petition that the Great Dane trailer involved in the accident was defectively manufactured, designed and/or marketed due to a lack of sufficient "conspicuity" and was in an unreasonably dangerous, defective condition. Great Dane moved for summary judgment on Wells's claims contending they were expressly and impliedly preempted by federal law. The trial court subsequently granted Great

* Senior Justice Ross A. Sears sitting by as- signment.

Dane's motion and it is from this decision that Wells now appeals.

## I. Background

On October 11, 1990, the decedent was killed in an multi-vehicle collision after the tractor-trailer rig traveling immediately in front of him jack-knifed, and the decedent's vehicle struck the side of the Great Dane platform trailer. The decedent's wife and child who were traveling with him were also injured in the accident.

The decedent's wife, his child, and the decedent's estate filed suit against Great Dane, the manufacturer of the trailer, alleging theories of negligence and products liability. In her first amended original petition, Wells contended the Great Dane trailer was defectively manufactured, designed and/or marketed because it lacked sufficient reflective devices and, therefore, suffered from inadequate "conspicuity." [1] Great Dane filed a motion for summary judgment asserting that Wells's conspicuity claims were expressly and impliedly preempted under federal law because the Great Dane trailer was equipped with the lighting and reflective equipment required under the Federal Motor Vehicle Safety Standard Act. The trial court granted Great Dane's motion and Wells perfected her appeal.

## II. Discussion

In her sole point of error, Wells contends the trial court erred in granting summary judgment in favor of Great Dane because her claims are not preempted by federal law.

### A. Statutory Overview

In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act ("the Act") which is implemented under the authority of the National Highway Traffic Safety Administration ("NHTSA"). The Act's explicit purpose is "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (recodified at 49 U.S.C. § 30101). In order to accomplish that purpose, Congress empowered the Secretary of Transportation to adopt motor vehicle safety standards. *See id.* § 1392(a) (recodified at 49 U.S.C. § 30111(a)). The Act contains an express preemption clause that provides:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (recodified at 49 U.S.C. § 30103(b)). The Act also contains a savings clause providing that "[c]ompliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law." *Id.* § 1397(k) (recodified at 49 U.S.C. § 30103(e)).

One of the standards promulgated by NHTSA is the Federal Motor Vehicle Safety Standard 108 ("FMVSS 108") which "specifies requirements for original and replacement lamps, reflective devices, and associated equipment." 49 C.F.R. § 571.108S1 (1988). FMVSS 108 was promulgated in response to the need "for signaling and for the safe operation of motor vehicles during darkness and other conditions of reduced visibility." *Id.* Although FMVSS 108 was amended in 1993 to require additional reflective equipment, the standard in effect at the time the trailer at issue was manufactured required only a three-light, three-reflector configuration on each side of the trailer. Wells contended that "Great Dane should have supplemented the basic requirements of a

---

1. This type of case is commonly referred to as a "conspicuity" case because the issue in dispute is the degree to which the trailer was visible and conspicuous to other drivers.

minimum standard that had remained essentially unchanged from 1967 through 1993." However, Great Dane asserted that because it fully complied with the minimum requirements of FMVSS 108, any claim based upon the failure to provide supplemental lighting and reflectorization is preempted under federal law. Thus, the issue before us is whether the Act and FMVSS 108 preempt Wells's common law claims that the trailer was defectively manufactured, designed and/or marketed due to insufficient conspicuity.

## B. Preemption

■ The Supremacy Clause of the Constitution of the United States entitles federal legislation and regulations to preempt state law. *See* U.S. CONST. art. VI, cl. 2; *Cipollone v. Liggett Group, Inc.* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). A federal law may expressly preempt state law. *See Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608. In addition, preemption may be implied if the scope of the statute demonstrates that Congress intended federal law to occupy the field exclusively or when state law actually conflicts with federal law. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (citing *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). A state law is in actual conflict with federal law when "it is impossible for a private party to comply with both state and federal requirements or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Myrick*, 514 U.S. at 287, 115 S.Ct. 1483 (quoting, respectively, *English*, 496 U.S. at 78–79, 110 S.Ct. 2270, and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85

L.Ed. 581 (1941)); *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246, 247–48 (Tex.1994). There is a well-established presumption against preemption, the purpose of which is to ensure that the " 'federal-state balance' ... will not be disturbed unintentionally or unnecessarily by the courts." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). This presumption is nowhere stronger than where the states have exercised primary authority in matters involving the public health and safety of their citizens. *See Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). We note that a common law personal injury action based upon negligence and products liability does, in fact, involve the state's power to regulate health and safety matters. *See Moore*, 889 S.W.2d at 249 (citations omitted). As the trial court did not specify whether it granted Great Dane's motion for summary judgment on the basis of express or implied preemption, we will analyze the issue under both theories. The Texas Supreme Court's holding in *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1 (Tex.1998) is controlling authority in this case.

In *Hyundai*, Mario Alvarado and his parents brought a products liability and negligence action against Hyundai Motor Company, Hyundai Motor America, Inc., and Port City Hyundai, Inc. ("Hyundai"), alleging that its two-point passive seat belt system, which did not include a lap belt, was defectively designed. *See Hyundai*, 974 S.W.2d at 2. Hyundai moved for partial summary judgment asserting the Alvarados' claims were preempted by the Act and its implementing regulations. *See id.* The trial court subsequently granted the motion and the Alvarados appealed the decision. *See id.* The court of appeals did not reach the preemption issue,[2] and

---

2. After the trial court granted Hyundai's summary judgment motion, the Alvarados filed a notice of nonsuit and later refiled their case in a different county. *See id.* at 3. In response to Hyundai's request, the trial court modified its nonsuit order to provide that it was with

Hyundai sought review by the Supreme Court. The Supreme Court remanded the case back to the court of appeals to allow it to consider the issue of federal preemption. On remand, the court of appeals held there was no express or implied preemption of claims and reversed the trial court's judgment. The Supreme Court granted Hyundai's application for writ of error challenging the appellate court decision.

### 1. Express Preemption

■ The preemption clause of the Act prohibits states from imposing "any safety standard applicable to the same aspect of performance of such vehicle ... which is not identical to the Federal standard." 15 U.S.C. § 1392(d) (recodified at 49 U.S.C. § 30103(b)). As in the present case, the manufacturer in *Hyundai* contended the Act's preemption clause extends to common law damage claims. *See Hyundai*, 974 S.W.2d at 2. In its analysis of the issue of express preemption, the *Hyundai* court stated that "[i]n determining whether Congress evinced a clear intent in the Safety Act to preempt common-law actions ..., we look first to the preemption clause's language, as well as to its statutory context." *Id.* at 6. The court considered the writings of one scholar, who noted that federal "motor vehicle safety standards" refer exclusively to regulations promulgated by the Secretary of Transportation, and not to state law tort claims or other civil damages actions, except in the context of the savings provision of § 1397(k).[3] The article concluded that it was highly unlikely that the Act

would use the term "standard" narrowly with respect to federal action and broadly with respect to state action. *See id.* The *Hyundai* court reasoned that "Congress's use of the term "standards" in the Safety Act other than in its preemption clause suggests that Congress intended to preclude the imposition of positive legislative or administrative enactments, rather than general common-law duties." *Id.* at 6.

In reaching this conclusion, the *Hyundai* court considered the definition that Congress gave to the term "motor vehicle safety standard" in the Act: "a minimum standard for motor vehicle performance ... which is practicable, which meets the need for motor vehicle safety and which provides objective criteria." *See id.* at 7; 15 U.S.C. § 1391(2) (recodified at 49 U.S.C. § 30102(a)(9)). The court found the definition "far removed from a court's or jury's determination that a manufacturer breached a duty of reasonable care or sold a defectively designed product." *See Hyundai*, 974 S.W.2d at 7. While acknowledging that these determinations may involve some element of practicability, the court emphasized that "a tort judgment establishes no 'objective criteria'; it simply establishes that a manufacturer or product failed to conform to a generalized standard of care or quality in a specific case." *Id.*

The court next considered other parts of the Act which suggest that the express preemption clause does not address common law negligence and products liability claims. *See id.* Immediately following the language barring the imposition of inconsistent state standards, section 1392(d)

prejudice as to the claims adjudicated by the partial summary judgment. *See id.* In addition to their appeal of the trial court's grant of Hyundai's summary judgment motion, the Alvarados appealed the dismissal with prejudice. *See Alvarado v. Hyundai Motor Co., Inc.*, 885 S.W.2d 167 (Tex.App.—San Antonio 1994), *rev'd*, 892 S.W.2d 853 (Tex.1995). The court of appeals concluded that the dismissal should not have been with prejudice. *See Hyundai*, 974 S.W.2d at 3. Hyundai sought review by the Supreme Court, which held that a nonsuit sought after a trial court grants a

partial summary judgment results in a dismissal with prejudice on the issues disposed of by the summary judgment, thereby converting the partial summary judgment into a final, appealable judgment. *See Hyundai Motor Co., Inc.*, 892 S.W.2d at 855.

3. Robert B. Leflar & Robert S. Adler, *The Preemption Pentad: Federal Preemption of Products Liability Claims After* Medtronic, 64 TENN. L. REV. 734 n. 215 (1997).

further provides that "the United States Government, a State, or a political subdivision of a State may prescribe a *standard* for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter." 15 U.S.C. § 1392(d) (recodified at 49 U.S.C. § 30103(b)(1)) (emphasis added). The court found "[t]his sentence strongly implies that the nonidentical "standards" section 1392(d) prohibits are the kinds of specific, measurable criteria that governmental entities must often adhere to in purchasing goods or services—positive enactments of legislative or administrative bodies—*not* the duty to use reasonable care or to refrain from selling an unreasonably dangerous product." *Hyundai*, 974 S.W.2d at 7 (emphasis added). Furthermore, the timing of the passage of the Act supports the conclusion that Congress did not intend to preempt state common law claims. The *Hyundai* court noted that the Act was passed at a time when a number of states had enacted laws attempting to impose safety requirements on vehicles sold within their borders, in other words, specific enactments of positive law. *See id.* (citing Ralph Nader & Joseph A. Page, *Automobile–Design Liability & Compliance with Federal Standards*, 64 GEO. WASH. L. REV. 415, 423 (1996)). Notwithstanding the infrequent enforcement activity under these state requirements, the court concluded these are the standards Congress most likely intended to preempt. *See id.*

The *Hyundai* court found that "[t]he strongest indication that Congress did not clearly intend to preempt common-law claims such as the Alvarados' is, of course, the Safety Act's savings clause." *Id.* at 8. Emphasizing the broadly worded language of the savings clause—"[c]ompliance with *any* Federal motor vehicle safety standard ... does not exempt *any* person from *any* liability under common law"—the court stated "the savings clause would be rendered virtually meaningless if it did not

preserve claims such as the Alvarados'." *Id.* Such an interpretation of section 1392(d) would effectively reduce the savings clause to preserving only those claims that would not be preempted in the first place. *See id.* (citing *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1120 (3d Cir. 1990) and *Taylor v. General Motors Corp.*, 875 F.2d 816, 824 (11th Cir.1989)). The court stated that "[t]hat result is contrary to our duty, in construing a statute, to give effect to every clause and word." *Hyundai*, 974 S.W.2d at 8. Finally, the court concluded its analysis of express preemption by considering the Act's legislative history. It looked at both the House and Senate reports as well as numerous statements in the Act's history which "leave little doubt that Congress intended to preserve all common law claims." *Id.* The court concluded that "in light of the language of the Safety Act's express preemption clause, the savings clause, and the statute's legislative history, we do not perceive a 'clear and manifest' intent on Congress's part to preempt the Alvarados' claims." *Id.*

We are bound to adhere to the decision rendered by the Supreme Court in *Hyundai*. As the suit in the present case also asserts common law claims of negligence and products liability, we likewise hold that Wells's claims are not expressly preempted.

### 2. Implied Preemption

As noted above, federal law may also preempt state law when the scope of a statute demonstrates that Congress intended to occupy a field exclusively or when state law actually conflicts with federal law. *See Freightliner Corp.*, 514 U.S. 280 at 287, 115 S.Ct. 1483, 131 L.Ed.2d 385; *id.* at 9. We consider both types of implied preemption below.

#### a. Field Preemption

Field preemption exists when "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the

States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (citing *Pennsylvania R.R. Co. v. Public Serv. Comm'n*, 250 U.S. 566, 569, 40 S.Ct. 36, 63 L.Ed. 1142 (1919)). It may also occur when "the Act of Congress … touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230, 67 S.Ct. 1146.

The *Hyundai* court found that the Act does not preempt the entire field of vehicle safety. *See Hyundai*, 974 S.W.2d at 10. It initially noted that it was aware of no court that has ever determined that Congress intended to occupy the entire field of vehicle safety. *See id.* at 9. Moreover, it emphasized that vehicle safety significantly differs from the areas that have traditionally been found to concern federal interests, such as the liability of federal officials or international relations. *See id.* at 9–10. In addition to the absence of precedent, the *Hyundai* court also found that "[b]y limiting the Act's express preemption clause to instances in which the Secretary has adopted a safety standard, Congress implicitly left the states free to enforce their own standards in the interstices." *Id.* at 10. As the court in *Hyundai* determined that the Act has not pervasively regulated the entire field of vehicle safety, we hold that Wells's claims are not impliedly preempted under a theory of field preemption.

### b. Obstacle Preemption

 Obstacle preemption occurs in two situations. The first instance occurs where it is impossible to comply with both the federal and state requirement. *See id.* The *Hyundai* court found that "[t]he regu-

lations promulgated under the Safety Act did not preclude Hyundai from installing lap belts," and, in fact, "[t]he safety standards themselves specify that lap belts combined with shoulder belts may be used to meet applicable crash protection requirements." *Id.* In the instant case, FMVSS 108 does not preclude Great Dane from equipping its trailers with additional lights and reflective materials, but it impliedly *permits* supplemental lighting and reflectorization. *See* 49 C.F.R. § 571.108S4.1.1, S4.1.3 (1988).[4]

Additionally, the *Hyundai* court stated that it was not impossible for Hyundai to comply with federal law and, at the same time, to respond in damages for breach of common-law duties. *See Hyundai*, 974 S.W.2d at 10 (quoting *Perry v. Mercedes Benz of N.A., Inc.*, 957 F.2d 1257, 1264 (5 th Cir.1992)) ("If a manufacturer is held liable in tort for not designing its system to provide protection greater than that required by the federal standard, the manufacturer can still comply with both the federal standard and the state tort standard by designing its system to meet the latter."). The court concluded that common law damage claims are distinguishable from a state statute or regulation that would prohibit a manufacturer from taking action that federal law expressly permits. *See Hyundai*, 974 S.W.2d at 10. Consequently, there is no impossibility here.

The other instance in which obstacle preemption may occur is when the state law constitutes an obstacle to the execution and accomplishment of the purposes and objectives of Congress. *See id.; Myrick*, 514 U.S. at 287, 115 S.Ct. 1483. The supreme court then identified the congressional purposes and objectives behind the enactment of the Act. The court stated

---

4. Chapter 49, section 571.108S4.1.1 of the Code of Federal Regulations provides, in pertinent part: "[E]ach vehicle shall be equipped *with at least* the number of lamps, reflective devices, and associated equipment specified in Tables I and III, as applicable." 49 C.F.R. 571.108S4.1.1 (1988). Section 571.108S4.1.3 provides that "[n]o additional lamp, reflective device, or other motor vehicle equipment shall be installed that impairs the effectiveness of lighting equipment required by this standard." 49 C.F.R. 571.108S4.1.3 (1988). Thus, the only supplemental equipment that is restricted is equipment which would interfere with the effectiveness of the minimum required equipment.

that "[i]t is indisputable that Congress's overriding purpose in passing the Safety Act was to reduce traffic deaths and injuries caused by traffic accidents." *See Hyundai,* 974 S.W.2d at 10.[5] The court also considered the purpose of FMVSS 208—"to reduce the number of deaths of vehicle occupants, and the severity of injuries"—and concluded that "[a]llowing the Alvarados' claims to proceed is entirely consistent with that purpose." In light of the stated purpose of FMVSS 108—"for signaling and for the safe operation of motor vehicles during darkness and other conditions of reduced visibility"—we likewise find that permitting Wells's claims is consistent with that purpose.

The *Hyundai* court also emphasized that the Act's savings clause demonstrates that another of Congress's purposes was to preserve common law claims in order to accomplish its primary objective. *See id.* at 11. The court quoted the Fifth Circuit's reasoning in *Perry* that "Congress sought to meet its goal of minimizing the number of deaths and injuries caused by auto accidents by setting forth minimum standards *and* leaving common law liability in place." *Perry,* 957 F.2d at 1265–66 (emphasis added). Another congressional purpose in enacting the Act was to encourage innovation and competition in vehicle safety. The *Hyundai* court reasoned that permitting manufacturers to do more than the standards require is wholly consistent with the congressional intent to foster innovation. *See Hyundai,* 974 S.W.2d at 11.

The court acknowledged some courts have found that allowing state tort claims would frustrate Congress's purpose to promote uniformity, or deprive a manufacturer of a choice with which Congress left it. *See id.* The above reasoning is of particular significance to this case because Great Dane strongly emphasizes Congress's purpose of encouraging uniformity in arguing that Wells's common law claims are preempted. However, the *Hyundai* court considered the decision in *Perry,* in which the Fifth Circuit, quoting the Third Circuit, refused to elevate what it described as a "secondary goal" of uniformity over the Safety Act's "primary goal" of reducing deaths and injuries:

> [U]niformity was not Congress's primary goal in enacting the Safety Act. In 15 U.S.C.A. § 1381, Congress declared that the Safety Act's purpose was "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." Congress evidently thought that preserving common law liability would further the goal of motor vehicle safety, since § 1397(k) was included as part of the Act. In the face of this clear declaration of congressional purpose, we are unwilling to accept an overly broad notion of preemption based on uniformity that could have the effect of undercutting Congress's concern for safety.

*Perry,* 957 F.2d at 1266 (quoting *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1122 (3d Cir.1990)). The *Hyundai* court agreed with the Fifth Circuit and declined to reject the savings clause in favor of Congress's secondary goal of uniformity: "We do not believe that the secondary goal of providing manufacturers with a choice outweighs the primary goal of reducing deaths and injuries." *Hyundai,* 974 S.W.2d at 12. The court concluded that "the imposition of common-law liability does not impose any particular safety standard upon a manufacturer; the manufacturer may choose to comply with the minimum federal standards and bear tort liability as a cost of doing business." *Id.* We, therefore, find that Wells's claims do

---

**5.** The Safety Act expressly provides:
Congress hereby declares that the purpose of [the Act] is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents. Therefore, Congress determines that it is necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce; to undertake and support necessary safety research and development; and to expand the national driver register.
15 U.S.C. § 1381 (recodified at 49 U.S.C. § 30101).

not constitute an obstacle to the execution and accomplishment of the purposes and objectives of Congress in enacting the Safety Act and are, therefore, not impliedly preempted under a theory of obstacle preemption.

In summary, we hold that Wells's conspicuity claims are neither expressly nor impliedly preempted. Accordingly, we reverse the trial court's rendition of summary judgment against Wells and remand the case to the trial court for further proceedings.