# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3815
No. 99-3818
No. 99-3820

_____

| | | |
|---|---|---|
| Allye M. Harris, Individually and as | * | |
| Guardian of Willie B. Harris, Jr., | * | |
| | * | |
| Plaintiff - Appellant/ | * | |
| Cross Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Great Dane Trailers, Inc., et al., | * | |
| | * | |
| Defendants - Appellees/ | * | |
| Cross Appellants. | * | |

_____

Submitted:  September 15, 2000

Filed:   December 11, 2000

_____

Before WOLLMAN, Chief Judge, LOKEN and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Willie Harris was catastrophically injured when his passenger car struck the rear of a trailer that was stopped at night on Interstate 55 in West Memphis, Arkansas. Willie's wife, Allye Harris ("Harris"), filed this action against the trailer manufacturer, Great Dane Trailers, Inc., and others, alleging *inter alia* that the trailer was defectively

manufactured because it lacked reflective tape making its rear end visible and conspicuous at night to other motorists. The district court granted summary judgment in favor of Great Dane and its dealer, Jim Hawk Trailers, Inc., concluding that this state law tort claim was preempted by Federal Motor Vehicle Safety Standard 108 ("FMVSS 108"), the federal safety standard for lamps and reflective devices promulgated under the National Traffic and Motor Safety Act of 1966, 49 U.S.C. §§ 30101 *et seq.* (the "Safety Act"). Harris appeals, arguing that her state law claim is not preempted. Harris concedes the Great Dane trailer complied with FMVSS 108 when it was manufactured in 1991, and when the accident occurred in 1996.

While this appeal was pending, the Supreme Court decided Geier v. American Honda Motors Co., 120 S. Ct. 1913 (2000). In Geier, plaintiffs claimed that a passenger car manufacturer was liable for failing to equip its 1987 automobile with airbags. Resolving a conflict in the circuits, the Supreme Court held that the Safety Act does not expressly preempt such common law tort claims. Great Dane concedes that Geier thereby overruled the district court's decision that Harris's claim against Great Dane is expressly preempted. However, the Court went on to hold that plaintiffs' claim in Geier was conflict-preempted by FMVSS 208, the Safety Act's standard dealing with airbags and other passive restraint systems. Thus, we must consider the question of implied conflict preemption in this case, an issue the district court did not reach. Having carefully reviewed the long and complex regulatory history of FMVSS 108, we conclude it does not preempt Harris's claim against Great Dane. Accordingly, we remand for consideration of the merits of that claim.

## I.

The Safety Act "directs the Secretary of Transportation or his delegate to issue motor vehicle safety standards that 'shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.'" Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 33 (1983) (quoting 49 U.S.C.

§ 30111(a)). The statute defines a motor vehicle safety standard as "a minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. § 30102(9). Within the Department of Transportation, the National Highway Traffic Safety Administration ("NHTSA") promulgates minimum motor vehicle safety standards that must be met by motor vehicle manufacturers. See 49 U.S.C. § 30102(9); 49 C.F.R. § 1.50(a). The Federal Highway Administration ("FHWA") establishes equipment standards for the safe operation of commercial motor vehicles on the Nation's highways. See 49 U.S.C. § 31136(a)(1); 49 C.F.R. Part 393.

Congress may expressly preempt state law as established by common law adjudications. See, e.g., CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993) (federal railroad safety statute preempts state law tort claim that train speed below the federal maximum was excessive). The issue is one of legislative intent. The Safety Act contains both a preemption clause, which provides that a State may establish "a [safety] standard applicable to the same aspect of performance . . . only if the standard is identical to the [Federal safety] standard," 49 U.S.C. § 30103(b); and a savings clause, which provides that "[c]ompliance with a [Federal] motor vehicle safety standard . . . does not exempt a person from liability at common law," 49 U.S.C. § 30103(e). The tension between these two provisions led to a conflict in the circuits regarding the preemption of state common law claims that seek to impose tort liability on those who have complied with a Safety Act standard. The Supreme Court resolved the express preemption conflict in Geier. Construing the preemption clause and the savings clause together, the Court unanimously concluded that the Safety Act does *not* expressly preempt "nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard." 120 S. Ct. at 1918; see 120 S. Ct. at 1933-34 (Stevens, J., dissenting).

A federal statute or regulation may also impliedly preempt state law. This occurs "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law . . . or where

state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995) (citations and quotation omitted). Congress in the Safety Act plainly did not intend to occupy the field of motor vehicle safety, so the implied preemption question turns on whether Harris's common law claim conflicts with or would frustrate the purpose of FMVSS 108. In Geier, giving deference to the Secretary's interpretation of the federal safety standard, the majority concluded that plaintiffs' state law tort action was impliedly preempted because FMVSS 208 is not merely a minimum airbag safety standard, and a ruling that the auto manufacturer was negligent in failing to provide airbags "would have stood as an obstacle to the gradual passive restraint phase-in that the federal regulation deliberately imposed." 120 S. Ct. at 1925.

Geier teaches that the implied preemption question requires careful analysis of whether a particular common law claim would conflict with, or stand as an obstacle to accomplishing the purposes of, a particular Safety Act standard, here, FMVSS 108. Under Arkansas law, the liability of the manufacturer in a products liability action is determined by whether the product was defective "at the time the product was placed on the market." ARK. CODE ANN. § 16-116-104(a)(1); see Boatman's Trust Co. v. St. Paul Fire & Marine Ins. Co., 995 F. Supp. 956, 962 (E.D. Ark. 1998). Therefore, we are concerned with the requirements of FMVSS 108 at the time the Great Dane trailer was manufactured and sold in 1991. See, e.g., Harris v. Ford Motor Co., 110 F.3d 1410, 1412 n.1 (9th Cir. 1997); Estate of Wells v. Great Dane Trailers, Inc., 5 S.W.3d 860, 862 (Tex. App. 1999).

We further read Geier as strongly suggesting that a *minimum* federal safety standard will rarely, if ever, impliedly preempt more rigorous common law safety obligations, particularly when, as here, the governing federal statute contains a common law remedial savings clause. Justice Breyer's majority opinion expressly noted that Geier "leav[es] . . . state tort law to operate . . . where federal law creates only a floor, *i.e.*, a minimum safety standard." 120 S. Ct. at 1918. Justice Breyer repeated that

-4-

theme in another transportation regulatory preemption case the Court decided last term: "common sense and sound policy suggest that federal *minimum* safety standards should not pre-empt a state tort action claiming that in the particular circumstance a railroad's warning device remains inadequate." Norfolk So. Ry. v. Shanklin, 120 S. Ct. 1467, 1477 (2000) (Breyer, J., concurring) (quotation omitted; emphasis in original). Thus, if the purpose of FMVSS 108 was merely to provide a *minimum* federal safety standard for trailer manufacturers, it does not preempt Harris's common law claim that Great Dane is liable in tort for failing to provide greater safety protection than the minimum standard required. Accord Fisher v. Ford Motor Co., 224 F.3d 570, 574 (6th Cir. 2000) (FMVSS 208 preempts common law claims that federally-mandated airbag warnings are inadequate because NHTSA "thought of its warning language as not simply the minimum, but as the sole language it wanted on the subject").

## II.

FMVSS 108 was first promulgated in 1967, effective January 1, 1969. See Chrysler Corp. v. Tofany, 419 F.2d 499, 501 n.1 (2d Cir. 1969). FMVSS 108 initially provided (and still provides) that "each vehicle shall be equipped with *at least* the number of lamps, reflective devices, and associated equipment specified." 49 C.F.R. § 571.108 ¶ S5.1.1 (emphasis added). Consistent with the Safety Act's general purpose, that is the language of a minimum safety standard.

When Great Dane manufactured the trailer at issue in 1991, FMVSS 108 did not *require* the use of reflective tape to make trailers more conspicuous. However, as Great Dane's Vice President of Engineering acknowledged, it was common in the industry for trailer manufacturers and users to add lights, reflectors, and reflective tape not required by FMVSS 108 for both safety and identification purposes. We have found no indication that the federal regulators at NHTSA and FHWA prohibited or even discouraged trailer manufacturers and users from voluntarily installing additional lights and reflective devices. This confirms that, prior to 1991, FMVSS 108 was

simply a minimum federal safety standard. Anticipating the Supreme Court's decision in Geier, we concluded in Larsen v. General Motors Corp., 391 F.2d 495, 506 (8th Cir. 1968), that the Safety Act's minimum standards are "supplementary . . . to the common law of negligence and product liability . . . and not an exemption from common law liability." There is no actual conflict between FMVSS 108 and Harris's common law claim because the federal standard neither required nor prohibited the use of reflective tape to make Great Dane's trailer more conspicuous.

Prior to 1991, FMVSS 108 contained (and still contains) a limited conflict-preemption provision: "No additional lamp, reflective device or other motor vehicle equipment shall be installed that impairs the effectiveness of lighting equipment required by this standard." 49 C.F.R. § 571.108 ¶ S5.1.3. That provision does not support Great Dane's broad preemption argument for two reasons. First, it merely confirms that the federal standard's mandatory minimum safety requirement may not be compromised. Second, whether Harris will argue in this case for a reflective tape configuration that impairs the effectiveness of lighting equipment mandated by FMVSS 108 -- a position that would be conflict-preempted by ¶ S5.1.3 -- is a fact intensive question that cannot be determined at this preliminary stage of the litigation. See Swope v. STI Transit Co., 796 F. Supp. 160, 163 (E.D. Pa. 1992).

Great Dane argues that permitting Arkansas tort law to endorse a specific tape configuration would undermine congressional intent to establish uniform Safety Act standards. See S. REP. NO. 89-1301, at 12 (1966), reprinted in 1966 U.S.C.C.A.N. 2709, 2720. We agree that uniformity of standards was one of the Safety Act's purposes. But as Geier's interpretation of the savings clause makes clear, a uniform *minimum* safety standard is not normally intended to preempt more stringent common law requirements. Only when federal regulators determine that uniformity is needed to promote the predominant legislative purpose of promoting safety will uniformity itself justify broad conflict preemption. See Buzzard v. Roadrunner Trucking, Inc., 966 F.2d 777, 783-85 (3d Cir. 1992); Estate of Wells, 5 S.W.3d at 867.

This review persuades us that FMVSS 108 as initially promulgated did not preempt a common law claim that Great Dane's trailer was defectively manufactured because it lacked reflective tape making its rear end more conspicuous at night. However, the later regulatory picture is more complex. In 1980, NHTSA announced it was considering whether to amend FMVSS 108 to require additional lights or reflective tape to make trailers and other large commercial vehicles more conspicuous. See 45 Fed. Reg. 35,405, 35,406 (1980). In 1987, the agency requested comments "concerning the use of reflective material to increase the conspicuity of large trucks and trailers," reporting that studies suggested that reflective tape does reduce accidents, but "there continue to be questions which must be answered before decisions on whether to proceed with rulemaking can be made." 52 Fed. Reg. 35,345, 35,346 (1987).

Great Dane argues that this ongoing regulatory effort impliedly preempts Harris's claim because, if Arkansas common law required a specific tape configuration in 1991, NHTSA's ability to conduct field studies of various conspicuity alternatives would have been frustrated. We disagree. During this study period, when the Great Dane trailer was manufactured, "the lack of federal regulation did not result from an affirmative decision of agency officials to refrain from" requiring reflective tape. Freightliner, 514 U.S. at 286 (holding that a suspended Safety Act standard regarding tractor-trailer air brakes did not preempt common law tort actions). To the contrary, NHTSA had tentatively decided that additional reflective devices would decrease accidents and was studying what configuration, if any, it should require. To hold that state common law remedies are preempted when a federal agency is studying whether to adopt or to strengthen a minimum standard would leave consumers without the protection of either regime. See Jordan v. Paccar, Inc., 792 F. Supp. 545, 552 (N.D. Ohio 1992).

Great Dane makes the related argument that preemption in this case is required by Geier because the absence of a reflective tape requirement in FMVSS 108 is like the "federally granted" option to install one of three passive restraint devices in FMVSS 208. However, the Court emphasized in Geier that FMVSS 208 permitted compliance

options to achieve public acceptance of mandatory passive restraint devices. See 120 S. Ct. at 1923-25. By contrast, by 1991 NHTSA had announced that reflective tape appeared to reduce accidents by increasing trailer conspicuity and that it was studying whether to mandate a particular configuration. See generally 52 Fed. Reg. 35,345 (1987); 56 Fed. Reg. 63,474 (1991). This ongoing study cannot properly be characterized as a federally granted option not to install tape. It simply left the industry where it was before -- free to make voluntary decisions whether to add reflective devices (presumably influenced in part by the risk of common law liability).

This is a far different regulatory situation than the court faced in Gracia v. Volvo Europa Truck, N.V., 112 F.3d 291, 297 (7th Cir. 1997), cert. denied, 522 U.S. 1050 (1998), which held that FMVSS 212 preempted a common law claim based on the manufacturer's failure to install a windshield retention system in a type of vehicle expressly exempted from the federal standard for safety-related reasons. The distinction becomes less clear in comparing this case to Lady v. Neal Glaser Marine, Inc., 228 F.3d 598, 614-15 (5th Cir. 2000), and Carstensen v. Brunswick Corp., 49 F.3d 430 (8th Cir.), cert. denied, 516 U.S. 866 (1995), which held that the Federal Boat Safety Act preempted claims that pleasure boats were defectively manufactured without propeller guards because the Coast Guard had expressly declined to require guards for reasons of technological feasibility, rather than safety. The relevant difference, as we see it, is that here NHTSA was studying whether to mandate a particular configuration of reflective devices, knowing of the industry practice of voluntarily adding more reflective devices than its minimum standard required. Without some indication from the agency that its studies were intended to have a broad preemptive impact, such as the Court found in Geier, we conclude the existence of those studies does not affect the implied preemption analysis.

In December 1991, after Great Dane manufactured the trailer at issue, NHTSA proposed a specific conspicuity rule, advising that it "anticipates that the final rule would specify only one pattern [of reflective tape], and not allow alternative

treatments." 56 Fed. Reg. 63,474, 63,476 (1991). The agency published its final rule in December 1992. It requires trailer manufacturers to provide a specific reflective pattern along the sides and rear, using reflex reflectors or reflective tape. The rule applies only to trailers manufactured after the effective date, December 1, 1993. See 57 Fed. Reg. 58,406 (1992); 49 C.F.R. § 571.108 ¶ S5.7.1.1.4.1. In prospectively amending FMVSS 108, NHTSA advised "that the safety benefits of conspicuity treatment are so demonstrable that fleet owners will wish to retrofit [older] trailers with conspicuity treatment." 57 Fed. Reg. 58,406, 58,409-10 (1992).[1] In March 1999, the FHWA amended 49 C.F.R. Part 393 to provide that all trailers manufactured before December 1, 1993, must be retrofitted with reflectors or reflective tape to comply with amended FMVSS 108 no later than June 1, 2001, or in some cases, 2009. See 64 Fed. Reg. 15,588, 15,605 (1999); 49 C.F.R. § 393.13(b).

In our view, these later developments do not affect the implied preemption question before us, because the claim against Great Dane turns on the preemption landscape in 1991, when its trailer was manufactured. However, these amendments to FMVSS 108 and the corresponding FHWA regulation may well affect future cases of this type. As Great Dane argues, it may be that highway safety would be enhanced if all trailers are equipped with uniform reflective devices and configurations. If that concept underlies NHTSA's prediction that it will "not allow alternative treatments," and if the agency follows through on that prediction, the argument that the reflective tape requirements of 49 C.F.R. § 571.108 ¶ S5.7 should be a uniform national standard will have a safety underpinning, presenting a much stronger case for implied conflict preemption than Great Dane is able to muster in this case.

---

[1]In April 1993, Great Dane urged its customers to retrofit their older trailers with reflective tape, estimating the average cost to be $200 per trailer.

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.